FILED

FEB 2 2 2013

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

JJK MINERAL COMPANY, LLC,
a Pennsylvania limited liability
company; PURNEL L. JONES, JR.;
a Pennsylvania resident; and
ELIZABETH R. JONES, a
Pennsylvania resident,
       Plaintiffs,

v.                             Civil Action No. 1:12 cv 00143

JOSEPH E. SWIGER, a
West Virginia resident,
       Defendant.

## MEMORANDUM OPINION AND ORDER DECIDING MOTION TO QUASH AND/OR PROTECTIVE ORDER [DE 31] AND PLAINTIFF JJK MINERAL COMPANY, LLC'S MOTION TO COMPEL [DE 34]

### I.
### Background

Joseph E. Swiger [Swiger] entered into a 1995 agreement to buy oil, gas, and mineral interests of Wangs [last name of the people who were the owners of lands and mineral interests] in West Virginia and Pennsylvania . Wangs executed and delivered deeds to their mineral interests and transferred their stock in Rock Camp Oil Company and Telluric Company to Swiger. Swiger did not immediately record the agreement, transfer instruments or deeds in West Virginia and Pennsylvania.

In 2010 Purnell Jones, Jr. of JJK Minerals Company, LLC, [JJK] approached Wangs about purchasing oil and gas rights on property in West Virginia and Pennsylvania. The land is the same lands and mineral interests Wangs sold Swiger fifteen (15) years earlier. Wangs agreed to sell to JJK. Deeds for the purchased lands and mineral interests and documents relating to the purchase of the

companies were recorded by JJK in Pennsylvania and West Virginia between May 17, 2010 and May 20, 2010.

During the process of closing the sale to JJK, it was learned that Swiger was a principal in Telluric Company. When Swiger was informed of JJK's intent to exercise its option to buy Telluric, he (Swiger) recorded his 1995 deeds in Pennsylvania and West Virginia on June 28, 2010.

JJK and Swiger, faced with claimed ownership by each of the same lands, negotiated and executed a Settlement And Release Agreement on August 27, 2010. Under the settlement JJK got 17 tracts of land.

On November 15, 2010, less than three (3) months after the settlement, Swiger sued Wangs in the Circuit Court of Monongalia County, West Virginia claiming breach of contract, unjust enrichment, slander of title, and fraud. On February 16, 2012, Swiger amended his state court complaint to include claims against JJK. Swiger was represented by the Daniels Law Firm . On April 9, 2012, JJK filed a motion to dismiss the state claims against it based on the settlement agreement and release barring Swiger from suing JJK. Monongalia Circuit Court Judge Clawges entered an order dismissing Swiger's claims against the JJK defendants on August 7, 2012. Swiger's appeal of the Circuit Court's decision is pending before the West Virginia Supreme Court of Appeals.

JJK filed the subject lawsuit on September 12, 2012 [DE 1] generally contending damages against Swiger for filing vexatious litigation [the state court case] against JJK in violation of certain terms and provisions of the settlement and release agreement prohibiting the parties from suing each other over the subject matter of the settlement agreement. Swiger answered [DE 6]. In his Fifteenth Defense Swiger avers: "In prosecuting the Mon County Case, this defendant relied upon the advice

of counsel with respect to forming a good faith belief that he had a valid right to prosecute said civil action."

Incident to the subject suit, on October 26, 2012 JJK served discovery on Swiger, served a subpoena duces tecum for documents from the non-party Daniels Law Firm [Swiger's counsel in the state case], and noticed the taking of a Rule 30(b)(6) deposition of a designated witness from the Daniels Law Firm. The subpoena and notice of 30(b)(6) deposition were served on the non-party Daniels Law Firm at its Charleston, West Virginia Offices (300 Summers Street, Suite 1270, Charleston WV 25301) and were returnable in Charleston, West Virginia (300 Kanawha Boulevard, East, Charleston, WV 25301).

The subpoena sought the following:

1. All documents and electronically stored information which evidence or reflect any disclosures (as contemplated by *Powers v. Goodwin*, 324 S.E.2d 701, 704-705 (W.Va. 1984) and *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC,* 547 S.E.2d 256, 263-264 (W.Va. 2001)) by Joseph E. Swiger to the Firm concerning the claims that Mr. Swiger asserted against JJK and/or Purnel L. Jones, Jr. in the Mon County Case.
2. All documents and electronically stored information which indicate, reflect or suggest that Joseph E. Swiger requested the Firm's advice as to the legality or appropriateness of asserting claims against JJK and/or Purnel L. Jones, Jr. in the Mon County Case.
3. All documents and electronically stored information which indicate, reflect or suggest that the Firm provided advice to Joseph E. Swiger concerning the legality or appropriateness of asserting claims against JJK and/or Purnel L. Jones, Jr. in the Mon County Case.
4. To the extent not produced in response to Paragraphs 1, 2 or 3 above, all documents and electronically stored information which indicate, reflect or suggest that Joseph E. Swiger relied upon the advice of counsel with respect to forming a good faith belief that he had a valid right to prosecute the claims he asserted against JJK and Purnel L. Jones, Jr. in the Mon County Case.
5. To the extent not produced in response to Paragraphs 1,2,3 or 4 above, all documents and electronically stored information which relate to the Firm's representation of Joseph E. Swiger in connection with the claims asserted by him against JJK and Purnell L. Jones, Jr. in the Mon County Case.

Due to scheduling conflicts counsel for JJK and counsel for Swiger [Steele Law Firm] discussed rescheduling the 30(b)(6) deposition but did not extend the production of subpoenaed documents beyond November 27, 2012.

No objection to the notice of deposition or the subpoena duces tecum was filed by or on behalf of the Daniels Law Firm or by Swiger within 14 days of October 26, 2012. Swiger by current counsel [Steele] produced documents represented to be responsive to the subpoena duces tecum to JJK on November 27, 2012. He later supplemented the responses. When JJK's counsel raised a question about the completeness of the production of documents, Steele by email dated December 4, 2012 responded: "Mr. Daniels' file was produced in its entirety pursuant to the subpoena, so I did not reproduce it." Mr. Daniels is a principal of the Daniels Law Firm.

During a December scheduling and status conference with District Judge Keeley, Steele, in behalf of his client Swiger, mentioned there may be a request to amend the pleadings to bring in the Daniels Law Firm as a party.

On January 11, 2013 JJK filed Second Amended Notice Of Rule 30(b)(6) Deposition Duces Tecum on counsel for Swiger [Steele] and a Subpoena Duces Tecum on the non-party Daniels Law Firm mirroring the October 26, 2012 Subpoena Duces Tecum. It was returnable at 300 Kanawha Boulevard, East, Charleston, WV 25301 on January 22, 2013 at 10:00 am.

January 17, 2013 the Daniels Law Firm by counsel [Ramey] filed the subject Motion to Quash Second Amended Notice of Rule 30(b)(6) Deposition Duces Tecum and Motion For Protective Order [DE 31].

On January 25, 2013 JJK by counsel [Walls] filed its Motion To Compel [DE 34].

Both parties filed the usual responses and replies to the cross motions [ DE 32, 35, 42, 43 and

44].

The subject motions [DE 31 and 34] were referred to the undersigned Magistrate Judge by Order of Referral [DE 33] dated January 18, 2013.

By Order dated February 1, 2013 [DE 38] the undersigned Magistrate Judge scheduled a telephonic hearing on the disputed cross-motions for February 13, 2013.

On February 13, 2013 came the parties by their counsel (Walls for JJK, Ramey for Daniels Law Firm and Steele for Swiger) for hearing on the motions. No evidence was offered. The undersigned Magistrate Judge received oral argument and took the matter under consideration.


## II.
### Jurisdiction

Pursuant to 28 USC §636(b)(1)(A) the undersigned Magistrate Judge has jurisdiction to decide the pending cross motions [DE 31 and 34].

## III.
### Issues Presented

1.  Was the October 26, 2012, subpoena duces tecum to the Daniels Law Firm withdrawn by JJK?

2.  Does Daniels Law Firm's failure to file an objection to the October 26, 2012 subpoena duces tecum waive its right to now object to the Second Amended Notice of Rule 30(b)(6) Deposition Duces Tecum filed January 11, 2013 [DE 27]?

3.  Does Swiger's assertion of the advice of counsel defense completely waive all rights of non-disclosure of all and every part of his file at the Daniels Law Firm and, if not, what is the extent or scope of his waiver in this case?

## IV.
## Discussion and Analysis

A.      Withdrawal of  October 26, 2012 Subpoena Duces Tecum

B.      Waiver of Right to Object to Substitute Notice

There is no issue of fact.

The original subpoena duces tecum was served by JJK on counsel for Swiger [Steele] on October 26, 2012 [DE 11].  The Subpoena To Testify At A Deposition In A Civil Action along with Exhibits A and B (Documents and electronically stored information to be produced) were served on the Daniels Law Firm  at the Firm's office in Charleston, WV on October 26, 2012 [DE 34, Ex. A]. The Court's docket does not show a withdrawal of that subpoena duces tecum by JJK.  Email communications from October 28, 2012, through November 19, 2012, between Steele and Walls unequivocally show the following: 1) an attempt by counsel for the parties to accommodate the schedule of each other with respect to the taking of the 30(b)(6) deposition of the designated witness from the Daniels Law Firm; 2) Steele was working and communicating directly with the Daniels Law Firm to obtain the documents covered by the subpoena duces tecum; 3) an agreement that Steele would produce the documents sought under the subpoena duces tecum to Walls on November 27, 2012; 4) Steele was responding to the Daniels' subpoena duces tecum by the production due on November 27, 2012;  5) the Swiger discovery requests would not be particularly document intensive implying that most of the documents would come from the Daniels Law Firm; and 6)  Steele in behalf of Swiger  or Steele or anyone else in behalf of Daniels did not qualify or object to the scope of documentation being sought from the Daniels Law Firm by the subpoena duces tecum. [DE 34, Ex. B].

In accord with the understanding reached by Steele and Walls through the previously mentioned emails, Steele supplied four discs containing documents and in the accompanying transmittal letter he stated that the production of documents was "[i]n response to the subpoena duces tecum served upon Attorney Daniels,...." Steele further represented "he[1] and his office staff have provided me with the enclosed documents,...." Attorney Daniels appears to have been copied on the Steele transmittal letter to Walls. [DE 34, Ex C].

After the document production of November 27, 2012, Walls in behalf of JJK sought clarification from Steele whether the documents produced were complete. Steele responded twice by email. In the first dated November 28, 2012 he stated "Thank you for your letter. It is my understanding that there has essentially been a complete production of the existing file in this matter through the response to the subpoena issued to Mr. Daniels, ...." In the second dated December 4, 2012 Steele states: "Mr. Daniels' file was produced in its entirety pursuant to the subpoena, so I did not reproduce it." [DE 34, Ex. D].

From the above taken as a whole, it was clear to JJK's counsel that he was being provided with Daniels' entire file in response to the October 26, 2012 subpoena duces tecum and that no one was objecting to the scope of the subpoena or withholding any documents based on a claim of privilege whether it be attorney client privilege or opinion work product privilege. When JJK filed its Amended Notice Of Rule 30(b)(6) Deposition on December 31, 2012 [DE 20] and Second Amended Notice Of Rule 30(b)(6) Deposition Duces Tecum on January 11, 2013 [DE 27], it was reasonable for JJK to believe it had the documents and that the deposition as arranged with Steele

---

[1]In the context of the full sentence of the Steele letter dated November 27, 2012 "he" means Attorney Daniels.

in behalf of Swiger and Daniels would take place as noticed. It is unclear from the record as developed whether the Daniels Law Firm misled Steele into believing and representing to Walls and his client, JJK, that the entire Swiger file was being produced by Daniels Law Firm in response to the subpoena.

The first overt sign there may be a problem with the above conclusion is the email from attorney Ancil Ramey [Ramey] representing the Daniels Law Firm, to Walls and Steele dated January 15, 2013 wherein Ramey states: "Now that I've reviewed your deposition notice and subpoena, and reviewed the file materials, I have concerns that, in certain respects, your notice and subpoena exceed the scope of that permitted when a party makes a limited waiver of the attorney/client privilege by assertion of an advice of counsel defense." [DE 34, Ex. E].

In accord with the findings announced on the record at the conclusion of the telephonic hearing, the undersigned Magistrate Judge concludes:

1. The October 26, 2012 subpoena duces tecum served on the Daniels Law Firm, a non-party, along with the notice of 30(b)(6) deposition was not withdrawn by JJK.

2. Swiger, Swiger's counsel, Daniels Law Firm or anyone in behalf of Daniels Law Firm did not object to the October 26, 2012 subpoena duces tecum or the October 26, 2012 notice of 30(b)(6) deposition or the scope of either within fourteen (14) days of October 26, 2012.

3. Swiger, Swiger's counsel, Daniels Law Firm or anyone in behalf of Daniels Law Firm did not at any time prior to or during their November 27, 2012 disclosure expressly make a claim of privilege and describe the material they were withholding as required pursuant to F.R.Civ.P. 45 (d)(2)(A) and (B) and L.R.Civ.P. 26(b)(5) and L.R.Civ.P. 26.04 (a)(2).

4. This Court has authority to "hold in contempt any person who, having been served, fails

without adequate cause to obey the subpoena." F.R.Civ.P. 45(e).   A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)." F.R.Civ.P. 45(e).

5.      Since the Daniels law firm was served at its offices in Charleston, WV and was to produce the subpoenaed documents at another law firm's offices in Charleston, WV, any failure without adequate excuse to obey the subpoena by a non-party is not saved under the territorial limits recognized under F.R.Civ.P. 45(e).

6.      Steele and Walls, in behalf of the parties and nonparty each was representing relative to the October 26, 2012 subpoena and deposition notice, acted in good faith with each other within the spirit of both the local rules (L.R.Civ.P. 26.04(b)) and the federal rules (F.R.Civ.P. 26 (c)(1)) to accommodate conflicts in schedules and timely production as required by the subpoena.

7.      The undersigned Magistrate Judge will not penalize parties or a nonparty or their representative or counsel for good faith accommodation.

8.      The record is inadequate to recommend that Daniels Law Firm or its principals be cited for contempt under F.R.Civ.P. 45(e).

9.      Failure to timely object to the subpoena duces tecum of October 26, 2012 coupled with the production (primary on November 27, 2012) of documents actually made in response to the same waives the right to object to the same (L.R.Civ.P. 26.04 (a)(1)).

10.     The Court has discretion to permit the late assertion of an objection to a subpoena duces tecum if the circumstances as shown by the record warrant.  9A Fed. Prac. & Proc. Civ. §2463 (3d Ed.)(2012) and L.R.Civ.P. 26.04 (a)(1).

C.    Scope of Waiver

During the hearing, the parties appeared to reach consensus that the subpoena did not extend to documents relating solely to the suit against Wangs which pre-dated the amendment bringing in JJK.

During the hearing, the parties definitely reached consensus that the subpoena did not extend to documents relating to the appeal of Judge Clawges' Circuit Court of Monogalia County Dismissal of the case against JJK[2].

This has the practical effect of substantially reducing the universe of contested documents from the original estimate of 7,000+.  It also has the practical effect of reducing any burden the non-party Daniels Law Firm may contend it faces if required to search for documents that may yet have to be produced.

Review of a sampling of cases from across the country reveals that, although there is no uniform bright line rule, the better position is that assertion of the advice of counsel defense waives the attorney client privilege with respect to communications between counsel and client with respect to the subject matter of the advice being sought but does not necessarily fully waive the  opinion work product immunity.

Oakley, Inc. v. Bubaboos Eyewear Corp., 2010 WL 4117223 (S.D. Cal., 2010) : "'When a party puts at issue legal advice it received, e.g., by way of an advice of counsel defense, it waives the attorney-client privilege with respect to those communications. _Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1163 (9th Cir.1992)_." A party cannot claim that it relied on the advice of counsel,

---

[2]JJK as used in this opinion refers to the defendants brought into the Swiger Mon County State case after Wangs were initially sued and the Plaintiffs in the within federal action.

while protecting the communications from disclosure. "[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." *In re EchoStar,* 448 F.3d at 1301 (citation omitted). "In such a case, the party uses the attorney-client privilege as both a sword and a shield." *Id.* (citation omitted). "To prevent such abuses, ... when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter."

> "[M]aterials relating to mental impressions, opinions and legal theories of attorneys" are typically protected from disclosure as work product. *Thorn EMI N. Am., Inc. v. Micron Tech.,* 837 F.Supp. 616, 621 (D.Del.1993) (citing Fed.R.Civ.P. 26(b)(3)). "Like the attorney-client privilege, work product immunity can be waived." *Id.* However, "a party's assertion of good faith reliance on advice of counsel [does not] necessarily put counsel's work product at issue." *Id.* at 622. "The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." *In re EchoStar,* 448 F.3d at 1300. "Counsel's mental impressions, conclusions, opinions or legal theories are not probative [of state of mind] unless they have been communicated to [the] client." *Thorn EMI,* 837 F.Supp. at 622. This is because "[w]ork-product waiver extends only so far as to inform the court of the [party's] state of mind." *In re EchoStar,* 448 F.3d at 1303. "Counsel's opinion is not important for its legal correctness." *Id.*[FN2]
>
> FN2. Work product may be discoverable if a party waives its immunity and discloses its work product, or if the opposing party demonstrates a "substantial need for the materials." *See In re Martin Marietta Corp.,* 856 F.2d 619, 622–23 (4th Cir.1988); Fed.R.Civ.P. 26(b)(3). Bugaboos does not, however, seek the production of any work product under these bases.'"

Plaintiff cites Brigham and Women's Hospital Inc., et al v. Teva Pharmaceuticals USA, Inc., et al., 707 F.Supp.2d 463, 471-472 (D. Delaware 2010), a patent infringement case[3], for the

---

[3]Brigham sued Teva alleging infringement of its patents pertaining to cinacalcet hydrocholoride. Teva countersued alleging inequitable conduct by Brigham before the patent office and moved for waiver of the attorney client privilege. The Court applies Federal Circuit Law in deciding substantive issues in patent cases.

proposition that once it is determined that the attorney client privilege has been waived, in delineating the scope of the waiver, under Federal Circuit law, the widely applied standard is: "that the waiver applies to all other communications relating to the same subject matter."

In re Martin Marietta Corp., 856 F.2d 619, 623 (4th Cir. 1988), cited in Bugaboos, the Fourth Circuit in defining "subject matter waiver" notes: "The Fourth Circuit has not embraced the concept of limited waiver of the attorney client privilege. It has held that if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." (internal citations omitted). Once a privileged communication is disclosed, confidentiality has been vitiated. "[A]ny disclosure of a confidential communication outside a privileged relationship will waive the privilege as to all information related to the same subject matter. That is commonly referred to as subject matter waiver...."

In the Federal Circuit "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures. When a party waives the attorney-client privilege by placing advice of counsel at issue, the waiver applies not only to otherwise privileged communications between the attorney and client, but also to any of the attorney's documents which reflect the substance of such advice, even if such documents would otherwise be immune from discovery under the work-product doctrine." Brigham and Women's Hospital Inc., et al v. Teva Pharmaceuticals USA, Inc., et al., *supra,* [internal citations omitted].

Plaintiff urges the undersigned to adopt the last full sentence of the above <u>Brigham</u> holding as authority to give Plaintiff all of the withheld documents that may be in the Daniels law firm insofar as they may relate to the advice given Defendant in bringing the Monongahela County State Court case. To do so requires the undersigned to ignore footnote 8 in the <u>Brigham</u> opinion which modifies the above quoted holding. FN8 reads:

> "With regard to documents otherwise protected under the work-product doctrine, the waiver applies to communicative documents between client and counsel, such as opinion letters, and to any of counsel's documents which reference a communication between client and counsel, even if such documents are not themselves communications to or from a client . ... However, documents or portions of documents which reflect counsel's mental impressions, legal conclusions, or litigation strategy, **and which were not given to the client and do not contain reference to client communications, remain protected** under the work-product doctrine [.]" (emphasis added by the undersigned) citing <u>In re EchoStar Commc'ns Corp.,</u> 448 F.3d 1294, 1302-04 (Fed. Cir. 2006).

The Delaware District Court stated the process of deciding the scope of waiver of the attorney-client privilege by assertion of the advice of counsel defense as follows:

> In determining the scope of Defendants' waiver, and thus the scope of the required disclosure of otherwise privileged communications, the Court must consider two competing policies. On the one hand, the Court must consider the policies that underlie federal discovery rules—the full production of relevant evidence in the interest of the search for truth. On the other hand, the Court must consider the policy that serves as the basis for the attorney-client privilege—to encourage clients to make full disclosure to their attorneys without fear of later compelled disclosure. *See Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682. The Court finds the competing policies of full, fair and complete discovery, and promoting full and complete consultation between clients and their legal advisers will be best served by limiting Defendants' waiver to the specific areas pled in Defendants' answers.[FN2] Defendants' assertions as to Defendants' reliance on counsel were very specific and very narrow. Therefore, the Defendants are compelled*769 to produce only those communications relating to the specific areas which Defendants have asserted reliance on the advice of counsel. <u>In re ML-Lee Acquisition Fund II, L.P., 859 F. Supp. 765 (D.Del. 1994).</u>

The Louisiana District Court addressed the issue of whether assertion of the advice of counsel

defense waived claims of privilege with respect to internal memoranda between counsel that the

client [underwriters] had not seen as follows:

> The underwriters, on the other hand, informed that notwithstanding the court's ruling, seven documents continued to be subject to attorney-client privilege. They argue that these documents are internal memoranda between attorneys in the Kutak law firm, do not concern advice communicated to any underwriter client and do not fall within the scope of the reliance upon advice of counsel defense raised in the deposition testimony. Plaintiffs continue to argue that they are entitled to the documents. Resolution of this dispute requires the court to consider whether the underwriters, by relying upon the advice of counsel, waived their attorney-client privilege as to those documents. The scope of the waiver, if found, extends to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought. _Ward,_ 854 F.2d at 787–88.

> It appears that all documents over which the underwriters continue to claim a privilege concern transactions for which counsel's advice was sought; however, as the _Ward_ case instructs, the limited waiver extends to communications to or from counsel. While the court believes that the underwriters' reliance upon advice of counsel results in a limited waiver of attorney-client, **the court does not conclude that the limited waiver would extend to internal memoranda between counsel that the underwriters have never seen; hence, the court finds that the attorney-client remains intact for the withheld documents.** (emphasis added by the undersigned). In re Taxable Mun. Bond Securities Litigation, 1993 WL 323069 (E.D. La., August 18, 1993).

In a patent infringement case Mushroom Associates v. Monterey Mushrooms, Inc., 1992 WL

442892 (N.D.Cal. 1992), the magistrate judge found that assertion of the advice of counsel defense

waived attorney client privilege, fact work product immunity and opinion work product immunity.

Counsel for Plaintiff in Mushroom Associates takes the same position that JJK takes in the subject

case. The magistrate judge in Mushroom Associates reasoned:

    A.    Waiver of Attorney Client Privilege

A survey of patent case law has convinced this court that the use of the advice of counsel defense waives the attorney-client privilege. In _Tr. of Leland Stanford Jr. Univ. v. Coulter Corp.,_ 118 F.R.D. 532 (S.D.Fla.1987), the court, upon a finding that

the defendant might use the advice of counsel defense to the plaintiff's claim of willful infringement, allowed discovery of documents protected by the attorney-client privilege. The defendant waived the attorney-client privilege by deliberately injecting the advice of counsel into the case as a defense. *Id.* at 533. In *Key Technology, Inc. v. Simco/Ramic Crop., 137 F.R.D. 322, 325 (D.Or.1991)*, the court acknowledged that, " ... where a party intends to rely on such a defense at trial, the opposing party is entitled to examine that material [privileged documents pertaining to the patent] during pretrial discovery." In *McNeil–PPC. Inc. v. Procter 4 Gamble Co., 138 F.R.D. 136, 137 (D.Colo.1991)*, the court observed that reliance upon the advice of counsel defense waives the attorney client privilege. The court in *W.L. Gore & Associates v. Tetratec Corp., 15 U.S.P.Q.2d 1048, 1051 (E.D.Penn.1989)*, found that, "[i]t is well-settled that a client may intentionally or unintentionally waive his privilege ... by asserting reliance upon advice of counsel as an essential element of his defense." The underlying principle supporting waiver when a party relies upon the advice of counsel defense is fairness. A party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege. *See Handgards, Inc.,* 413 F.Supp. at 929. Clearly, the party claiming the advice of counsel has a tough choice: claim the defense or claim the attorney-client privilege. However, tough choices are usually only disfavored when the choice is between constitutional rights. Because no constitutional rights are at stake, the defendants must live with their decision to claim the advice of counsel as a defense. *Abbott Laboratories v. Baxter Travenol Laboratories,* 676 F.Supp. 831, 832–833 (N.D.Ill.1987).

B.    Waiver of Work Product Immunity

However, the work product immunity is distinct from the attorney client privilege and merits its own analysis. A party's, " ... waiver of the attorney-client privilege does not necessarily mean that the protection afforded by the work product doctrine is also breached." *Handgards, Inc.,* 413 F.Supp. at 929. Furthermore, the work product immunity is largely codified in Fed.R.Civ.P. 26(b), a distinction the attorney-client privilege lacks.

Fed.R.Civ.P. 26(b)(3) makes a distinction between most work product and mental impressions of the attorney. According to Rule 26(b)(3), most work product may be discoverable upon a showing of substantial need and inability without undue hardship to obtain substantially equivalent materials. In *Handgards,* Judge Orrick found that mental impressions are not absolutely protected by the work product immunity. *Handgards, Inc.,* 413 F.Supp. at 931. He also found that when an attorney's opinion work product is directly at issue and the need for production is compelling, the opinion work product is discoverable. *Id.* at 933.

In most instances where the advice of counsel is an issue, the party seeking discovery will be able to meet the standard imposed by Rule 26(b)(3). A substantial need exists

for the work product so that the discovering party can adequately address the advice of counsel defense. Also, the discovering party cannot obtain substantially equivalent materials because the specific work product is directly at issue. For instance, although the discovering party could obtain its own test results concerning a patent, the tests results known to counsel at the time advice is given are what is relevant when a party asserts the advice of counsel defense. Consequently, it is difficult to imagine the circumstances where the standard for discovering the vast majority of work product will not be met in an advice of counsel case.

*5 Turning to discovery of opinion or mental impression work product, the heightened standard suggested by *Handgards* is met in an advice of counsel case. The work product is directly at issue. For example, knowing what the attorney thought about infringement bears directly on the defendants' advice of counsel defense in this case. Also, the plaintiff's need for this information is compelling. The only way plaintiff can attack the defendants' advice of counsel defense is by having access to circumstances and factors surrounding the advice. Discovery of mental impression work product may be the only way to have access to the circumstances and factors surrounding the advice.

By asserting the advice of counsel defense, the defendants have waived their attorney work product immunity. All documents containing work product relevant to the infringement issue must be produced. Recognizing the importance of the work product immunity, the waiver in this case with respect to opinion work product must be strictly construed. Any documents that contain opinion work product pertinent to issues beyond the infringement issue may be redacted.

In the case of <u>Kelsey-Hayes Co. v. Motor Wheel Corp</u>, 155 F.R.D. 170 (W.D. Mich., 1991), another magistrate judge in a wilful infringement of patent case ruled that the Plaintiff has to produce "documents or other materials used by or prepared by Plaintiff or Plaintiff's counsel which refer to the Barker opinion. ... any other opinions which support, contradict or weaken the Barker opinion, or other evidence which would go to Plaintiff's good faith reliance on the Barker opinion" limiting the production "to opinions and materials prepared prior to the date Plaintiff filed this action."  The magistrate judge reasoned :

Although the attorney-client privilege is an important element of our legal system, parties should not be able to manipulate the privilege so as to release only favorable information and withhold anything else. *Technitrol, Inc. v. Digital Equipment Corp.,* 181 U.S.P.Q. 731, 1974 WL 20497 (N.D.Ill.1974). Where a party asserts reliance on

advice of counsel as an element of his defense, the party thereby waives the attorney-client privilege as to all communications to and from counsel [FN1] concerning the transaction for which counsel's advice was sought. *172 *Pantor v. Marshall Field & Co.,* 80 F.R.D. 718, 721 (N.D.Ill.1978); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976). The law is well-settled that the underlying rationale is one of "fairness." *Central Soya Co., Inc. v. Geo. A. Hormel & Co.,* 581 F.Supp. 51 (W.D.Okla.1982); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977).

FN1. One waiver consequently waives the privilege as to all the lawyers working jointly on the matter; there are not numerous privileges between each of the firm's attorneys and the client. See *Fonar Corp. v. Johnson & Johnson,* 227 U.S.P.Q. 886, 887, 1985 WL 186693 (D.Mass.1985).

Regarding the scope of the waiver in patent cases, courts generally construe the scope of the subject matter narrowly. See *Fonar Corp. v. Johnson & Johnson,* 227 U.S.P.Q. at 888; *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. at 156. If courts define the scope of waivers too broadly, parties may be deterred from disclosing any documents that may be privileged. Courts, however, must also keep in mind that issues of willful infringement are fact questions determined from the "totality of the circumstances." See *Shiley, Inc. v. Bentley Laboratories, Inc.,* 794 F.2d 1561, 1568 (Fed.Cir.1986). Therefore, courts should fashion their orders compelling the production of privileged documents on a case by case basis and consistent with the principles of fundamental fairness.

Yet another magistrate judge ordered production of attorney-client privileged and work-product immune material in the patent infringement case of Aspex Eyewear v. E'Lite Optik, Inc., 276 F.Supp.2d 1084 (D. Nev. 2003). His rationale detailed as follows is persuasive but not binding on all of the issues raised in the instant action notwithstanding that his case was a patent case wherein the intent of the infringer is of paramount importance on the wilfulness issue:

The Federal Circuit has not decided the scope of the waiver of the attorney-client privilege and work-product immunity in a discovery dispute where reliance of counsel is asserted as a defense to willfulness, and the district courts have resolved disputes over the scope of the waiver differently. 1091.
There is a split of authority among the cases that have addressed the scope of the waiver of the attorney-client privilege and work-produce [sic] immunity in the context of the defense of reasonable reliance on advice of counsel to an allegation of willful infringement. One line of cases take an expansive view of the scope of a waiver analyzing the need for discovery in litigation generally. See, e.g., *Carl Zeiss*

*Jena GmbH, and Carl Zeiss, Inc. v. Bio-Rad Laboratories, Inc.,* 2000 WL 1006371 (S.D.N.Y.2000); *1092 *Fonar Corp. v. Johnson & Johnson,* 227 USPQ 886, 3 Fed. R. Serv.3d 145 (D.Mass.1985); *Chiron Corp. v. Genentech,* 179 F.Supp.2d 1182 (E.D.Ca.2001); *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 1992 WL 442892 (N.D.Ca.1992); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 192 USPQ 316 (N.D.Ca.1976).

Another line of cases criticizes this approach for failing to recognize Federal Circuit authority on the substantive patent law of willful infringement, and holds that the waiver does not extend to attorney work-product or documents upon which an attorney relied, unless they were disclosed to the client. *See, e.g., Steelcase v. Haworth,* 954 F.Supp. 1195, 43 USPQ2d 1041 (W.D.Mich.1997); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 837 F.Supp. 616, 29 USPQ2d 1872 (1993).

The court finds the former line of cases more persuasive.... Although the defense of reliance on advice of counsel to an allegation of willful infringement is an issue that appears unique to patent litigation, reliance on the advice of counsel defense, in general, is not. "Few areas of privilege law have been as extensively litigated of late as the question of whether a waiver has occurred by virtue of an affirmative reliance on privileged material." *Epstein, The Attorney-Client Privilege and the Work-Product Doctrine,* page 343, Fourth Edition, published by the American Bar Association, Section of Litigation, 2001.

There are many contexts in which the courts have held a party waives the attorney-client privilege by affirmatively relying on the advice of counsel to support a claim or defense. *See, e.g., Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2nd Cir.1964), *cert denied,* 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965) (attorney client privilege waived where the advice of counsel defense raised in an antitrust case and attorney had submitted an affidavit to the Civil Aeronautics Board); *Livingstone v. North Belle Vernon Boro.,* 91 F.3d 515, 537 (3rd Cir.1996) (civil rights plaintiff who asserted she relied on advice of counsel in waiving the right to sue put advice of counsel in issue and waived privilege); *United States v. Amlani,* 169 F.3d 1189, 1195-96 (9th Cir.1999) (client asserting he discharged attorney for certain reasons cannot invoke the attorney-client privilege to deny government counsel access to the information needed to refute claim); *Tsai-Son Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999) (executive deponents claiming during deposition that they relied on advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Johnson v. Rauland-Borg Corp.,* 961 F.Supp. 208, 211 (N.D.Ill.1997) (employer who asserted it acted reasonably by employing outside attorney to investigate Title VII claim waived privilege).

Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by

asserting the attorney-client privilege or work-product doctrine as a shield. This court joins those courts that have held that the defendant, having waived the privilege by asserting the advice of counsel defense, must produce not only attorney-*1093 client communications, but also all documents relied upon or considered by counsel in rendering the opinions relied upon. *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 24 USPQ2d 1767, 1992 WL 442892 (N.D.Ca.1992); *FMT Corp. v. Nissei ASB Co.,* 24 USPQ2d 1073, 1992 WL 240688 (N.D.Ga.1992); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Ca.1976). A contrary result ignores the potential for litigation abuses, and erects too much of an impediment to the truth seeking process. Counsel for the opposing party should not be able to act as the gatekeeper to determine what information their adversary is entitled to have. As the court noted in *Chiron Corp. v. Genentech,* 179 F.Supp.2d 1182, 1186, parties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject.

Additionally, as the court pointed out in *Dunhall Pharm., Inc. v. Discus Dental,* 994 F.Supp. 1202, 1204, although the state of mind of the alleged infringer is the relevant inquiry in a willful infringement accusation, the standard for discovery is broader than that for admissibility. In this court's view, the cases that narrow the scope of the waiver of the attorney-client privilege and work-product immunity to communications between the attorney and the client overemphasize the standards for admissibility and fail to recognize that litigants are entitled to test the positions taken by adverse parties in discovery.

> Quoting *Hoover Universal, Inc. v. Graham Packaging Corp.,* 44 USPQ2d 1596, 1598, 1996 WL 907737 (C.D.Cal.1996) the court observed:

A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work-product doctrine. *Steelcase* over emphasizes the Federal Circuit's limitations on admissibility, and fails to take into account Rule 26(b)(1)'s broader reach at the discovery phase of the litigation. While negative evidence contained in the attorney's files may not ultimately reflect upon the client's state of mind, and will therefore not be admissible as evidence of willfulness, that evidence could very well lead to the discovery of relevant and admissible evidence of the client's state of mind that might not otherwise come to light. If the attorney's files contain evidence contradicting or questioning the opinion relied on by the client, the plaintiff has a right to know about such evidence in order to fully question defendants and their counsel regarding that evidence, disclosure to the client, and other related issues. *Dunhall,* at 1204-05, quoting *Hoover* (internal citations omitted).

In *Frazier Ind. Co. v. Advance Storage Products,* 33 USPQ2d 1702, 1994 WL 761247 (C.D.Cal.1994) the court granted the plaintiff's motion to compel documents

and answers to deposition questions in a patent infringement case where the defendant indicated it intended to rely upon oral advice given to it by counsel to defend against an accusation of willful infringement. The court noted that, although the state of mind of the infringer is at issue, that state of mind must be determined from all of the surrounding circumstances. Additionally, the *Frazier* court reasoned that where the attorney gave oral opinions " *Mushroom Assoc.* is the more closely analogous precedent" and that "this resolution is more compatible with the controlling Circuit precedent governing work product," citing *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992). There the Ninth Circuit held that opinion work-product was discoverable*1094 where the mental impressions of counsel were at issue and the need for the material was compelling.

The cases which limit the scope of a waiver to communications between the attorney and client also ignore the fact that evidence in an attorney's file will not always clearly reflect whether its contents were communicated to the client. They also fail to recognize that the absence of materials in an attorney's file may be compelling evidence of the competency of the opinion and/or the adequacy of the inquiry on the subject matter of the defense. A litigant could manipulate the process by giving the attorney only favorable information, and directing that he or she only review the materials provided, effectively dictating what the opinion will be. Similarly, an attorney who reviews and discounts or disregards materials adverse to the client's position should not be able to hide those materials from discovery asserting he or she did not rely upon them in rendering his or her opinion. There is simply too much potential for abuse to preclude an adversary from conducting discovery in these areas.

In *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3rd Cir.1995) the court compelled a law firm to provide the entire file on work done leading up to an opinion letter, including backup documents that were not provided to the client, so that the reasonableness of the advice relied upon could be determined reasoning:

The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice, whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.

Similarly, in *Government Guar. Fund of Finland v. Hyatt Corp.,* 177 F.R.D. 336, 343 (D.Vi.1997) the court held that a party who submitted its attorney's affidavit in opposition to a motion for summary judgment waived the attorney-client privilege with respect to matters asserted in the affidavit finding:

There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of waiver of the attorney-client privilege and therefore the scope of discovery.

To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here-fairness.

The same rationale applies to the waiver of the work-product immunity. As the court held in _Handgards, Inc. v. Johnson & Johnson_, 413 F.Supp. 926, 931-33 (N.D.Ca.1976), although attorneys' work-product is ordinarily protected, once a client decides to call the attorneys as witnesses, the work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth. The court wrote:

Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of relevant work-product of these attorneys. Without discovery of the work-product, plaintiff will be unable to ascertain the basis and facts upon which the opinions of these witnesses*1095 are based. This will undoubtedly impair plaintiff's ability for effective cross-examination on a crucial issue.

_Id._ at 931. _See also, Vaughan Furniture Co., Inc. v. Featureline Mfg., Inc.,_ 156 F.R.D. 123, 128 (M.D.N.C.1994) where the court refused to quash a subpoena served on a patent law firm designated as an expert witness finding "[W]hen a party names its attorney as an expert witness, the witness must produce all documents considered by him or her in the process of formulating the expert opinion, including documents containing opinion." and _Mushroom Assoc. v. Monterey Mushrooms, Inc.,_ 25 USPQ2d 1304, 1992 WL 442898 (N.D. CA 1992) (work-product of a patent attorney named as an expert witness is discoverable just as documents that any expert relies on to formulate an opinion are discoverable).

Finally, although the court finds the defendant has waived the attorney-client privilege and work-product immunity on the subject matter of the defense of advice of counsel, that defense is limited to the advice provided by Mason and Fisher. The court will not compel defendant's current litigation counsel to produce work-product materials they have generated since taking over representation of the defendant from Mason. The work-product doctrine is aimed to protect the effectiveness of a lawyer's trial preparation by immunizing his or her materials from discovery. _Handgards, id._ at 930, citing _Kirkland v. Morton Salt Co.,_ 46 F.R.D. 28 (N.D.Ga.1968); Note, _Developments in the Law-Discovery,_ 74 Harv. L.Rev. 940, 1045 (1961).

The court has a duty to balance plaintiffs' need to conduct discovery with the right of the defendant, and its counsel, to retain the benefits of the lawyers' work for the client free from intrusion by opposing parties and their counsel. As the Supreme Court reasoned in _Hickman v. Taylor,_ 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947):

Proper preparation of a client's case demands that [the lawyer] assemble information,

sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

The court finds the reasoning of the District Judge in *Dunhall Pharm., Inc. v. Discus Dental, Inc., supra,* persuasive on the temporal limitation of the work-product waiver in a reliance on advice of counsel defense to willful patent infringement case. There, the court recognized that plaintiffs had a valid interest in discovering work-product related to the subject matter of the asserted defense, but balanced the defendant's counterveiling interests in protecting their work-product and found that "[O]nce the lawsuit is filed, the waiver of work-product protection ends. This temporal limitation flows from the enhanced interest in protecting against disclosure of trial strategy and planning." *Id.* at 1206. The court would ordinarily be inclined to impose a temporal limitation on the waiver at the point the lawsuit was filed in the absence of an allegation the defendant's willful infringement was ongoing. However, here, E'Lite designated its former litigation counsel as an expert witness. The opinion on which E'Lite intends to rely were not reduced to writing and are oral. Mason has been deposed and was unable to recall with any specificity what he reviewed, when he reviewed it, what he discussed with the client, and what his opinions were based on. The majority of Mason's deposition testimony was conclusory and unsupported by specifics. Under these circumstances, the court *1096 finds defendant has waived the work-product immunity for Mason's file on the subject matter of the asserted defense, that is, evidence relating to willfulness, infringement, validity, and/or enforceability of the Patents-in-suit.

Fisher was retained after the lawsuit was filed, provided a written opinion, and was subsequently designated as an expert witness. His work product is discoverable just as documents that any expert relies upon in formulating opinions are discoverable.

In the instant suit, Swiger's defense to JJK's claims is in part based on his claim that he "relied upon the advice of counsel with respect to forming a good faith belief that he had a valid right to prosecute said civil action." [DE 6 - Fifteenth Defense]. By asserting this defense, Swiger waives his right to assert the attorney client privilege against disclosure of communications he had with the Daniels Law Firm. The waiver extends to the advice he received from the Daniels Law Firm in forming his alleged good faith belief that he had a valid right to prosecute the Mon County action against JJK.

"Good Faith Belief" is a state of mind. Swiger alleges that he received and relied on the advice of the Daniels Law Firm with respect to suing JJK in state court. Like any lawyer advising a client, incident to doing so the Daniels Law Firm would have received information from Swiger, from others, and perhaps conducted its own factual investigation and legal research. It is unknown what information the Daniels Law Firm got from Swiger, from others, or as a result of its own investigation and research. It is precisely that kind of information in the form of documents and electronically stored materials that JJK now seeks to discover from the Daniels Law Firm through the subpoena duces tecum.

The Daniels Law Firm nor their motion counsel should be the "gatekeeper" who determines what information JJK is entitled to have. They "should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject." Chiron Corp v. Genentech, *supra* at 1186.

In order for JJK to oppose the defense of reliance on advice of counsel asserted by Swiger, JJK must be able to discover the information that was conveyed by Swiger to counsel and vice-versa; discover what facts were provided by Swiger to the Daniels Law Firm; discover what facts the Daniels Law Firm may have obtained from any other sources other than Swiger; discover the legal research conducted by and considered by the Daniels Law firm; discover the opinions that the Daniels Law Firm gave Swiger and discover whether Swiger selectively ignored any of the facts and opinions given him by the Daniels Law Firm in reaching a decision to authorize claims being made against JJK in the state court action. Glenmede Trust Co. v. Thompson, *supra* at 486.

Based on the foregoing analysis, the waiver created by assertion of the advice of counsel defense includes work product of the Daniels Law Firm, whether opinion or fact, whether the same

was communicated to Swiger or was only considered in the process of forming any opinion that Swiger had a right to sue JJK in state court. JJK has no other source from which to get this information and the information is relevant to the defense asserted by Swiger.

JJK's right to know extends from the beginning of the process that led to any advice given by the Daniels Law Firm to Swiger that he had a valid right to prosecute said Mon County civil action against JJK. It is unknown when that process began. Only the Daniels Law Firm and Swiger know that date. That date must have been sometime in the continuum between when Swiger first consulted the Daniels Law Firm concerning the property dispute and when he filed the amended complaint joining JJK as a party defendant in the Mon County Civil Action. JJK's right to know ceases with the filing of the state court action against it. JJK is not entitled to the trial strategy developed by the Daniels Law Firm after the JJK was joined in the state court action. Nor is JJK entitled to attorney -client communications, fact work product and opinion work product solely dealing with Swiger's claims against the Wangs unless the same were also used in forming the opinion to bring JJK in to the state court action.

<u>V.</u>
<u>Order</u>

For the foregoing reasons, **Plaintiffs' Motion To Compel [DE 34] is Granted In Part and Denied In Part and Defendant Swiger's Motion To Quash [DE 31] is Denied In Part and Granted In Part.**

Within 30 days of the entry date of this Order, the Daniels Law Firm shall file a supplemental response to the subpoena duces tecum last issued. The Daniels Law Firm shall provide "[t]o the extent not produced in response to Paragraphs 1, 2, 3 or 4 [of that subpoena], all documents and

24

electronically stored information which relate to the Firm's representation of Joseph E. Swiger in connection with the claims asserted by him against JJK and Purnell L. Jones, Jr. in the Mon County Case" including but not limited to: A) any and all documents and electronically stored information of communications to and from Swiger in any way relating to the substance and procedure of the decisional process concerning advice the Daniels Law Firm provided to Swiger concerning claims he may have had against JJK during the continuum of time when Swiger first consulted the Daniels Law Firm concerning the property dispute and when he filed the amended complaint joining JJK as a party defendant in the Mon County Civil Action; B) any and all documents and electronically stored information received from Swiger, from others or garnered from the Daniels Law Firm's own factual investigation during the continuum of time when Swiger first consulted the Daniels Law Firm concerning the property dispute and when he filed the amended complaint joining JJK as a party defendant in the Mon County Civil Action, whether or not the same were communicated to or from Swiger directly, which in any way relates to advice the Daniels Law Firm provided to Swiger concerning claims he may have had against JJK; C) and, any and all documents and electronically stored information of communications of any and all legal research, internal memorandums of law, memorandums of discussions concerning law applicable to and considered by the Daniels Law Firm during the continuum of time when Swiger first consulted the Daniels Law Firm concerning the property dispute and when he filed the amended complaint joining JJK as a party defendant in the Mon County Civil Action, whether or not the same were communicated to Swiger directly, concerning advice the Daniels Law Firm provided to Swiger about claims he may have had against JJK.

The parties shall schedule the 30(b)(6) witness deposition for a date certain following the

supplemental disclosure herein ordered.  In the event the parties are unable to agree on a date, counsel for plaintiffs shall notify the Court and the Court will set a scheduling conference to accomplish the scheduling.

This is a split decision.  Accordingly, neither party shall recover costs from the other that were incurred  incident to prosecuting or defending the motions at issue.

The clerk is hereby directed to provide electronic notice of the entry of this order to counsel of record.  The clerk is further directed to remove DE 31 and DE 32 from the docket of motions actively pending before the Court.

It is so **ORDERED**.

Dated: February 22, 2013

`

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE